CONCERNED CITIZENS AGAINST CROSSGATES et al., Appellants, v ROBERT FLACKE, AS COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, et al., Respondents, and PYRAMID CROSSGATES COMPANY, Intervenor-Respondent.

Third Department, December 2, 1982

APPEARANCES OF COUNSEL

*Lewis B. Oliver, Jr.,* for appellants.

*Robert Abrams, Attorney-General (Reuben Goldwaser, Peter H. Schif* and *Francis J. Keehan* of counsel), for Robert Flacke and another, respondents.

*Finley, Kumble, Wagner, Heine, Underberg & Casey (Donald S. Snider* and *Gerald M. Levine* of counsel), for intervenor-respondent.

MAHONEY, P. J.

Pyramid Crossgates Company wishes to construct a large shopping mall on a tract of land located partially in the Town of Guilderland and partially within the City of Albany. In furtherance of that goal, Pyramid filed applications with the Department of Environmental Conservation (DEC) for various required permits within that agency's jurisdiction, including a State Pollutant Discharge Elimination System (SPDES) permit pursuant to ECL article 17. A SPDES permit was required as a result of the proposed shopping mall's location in the watershed of the McKownville Water District in the Town of Guilderland and Pyramid's proposal to discharge storm water runoff from the mall site into a body of water known as the Krumkill and, ultimately, into the McKownville Reservoir, both of which bodies of water are required to meet class A water quality standards (see 6 NYCRR 701.4).

Following lengthy hearings, the Commissioner of DEC approved all of Pyramid's permit requests. The administrative law judge handling the matter who reported to the commissioner had expressed some concern over whether granting Pyramid its SPDES permit, which assured compliance with class A water standards established by DEC for the Krumkill and the McKownville Reservoir, might be violative of a separate body of regulations promulgated by the Department of Health (DOH) which protects public water supplies (see 10 NYCRR 100.17). The Commissioner of DEC, in approving Pyramid's application for a SPDES permit, found the SPDES permit to be compatible with the public water supply regulations since the purpose of those regulations was to prevent contamination and the SPDES permit had set levels of contaminants for that purpose.

Plaintiffs then commenced this action seeking a declaration that the granting of the SPDES permit to Pyramid would violate several provisions of the regulation protecting the McKownville Water District (10 NYCRR 100.17 [e], [f], [m]). Special Term, after allowing Pyramid to intervene in the action, rendered judgment in favor of defendants. In so doing, Special Term declared that "There is no conflict of jurisdiction between the Department of

Environmental Conservation acting under ECL § 17-0803 and the Department of Health under NYCRR 100.17 with respect to the issuance of a State Pollutant Discharge Elimination System (SPDES) permit". This appeal by plaintiffs ensued.

Initially, we reject the argument advanced by defendants and the intervenor that the provisions of 10 NYCRR 100.17 do not apply to the Krumkill and McKownville Reservoir since these two bodies of water are not currently used as a source of potable water in the Town of Guilderland. Although it is conceded that the reservoir was abandoned as a source of potable water in 1973 due to the fact that it had become heavily polluted, that fact does not remove the bodies of water involved in this matter from the protection afforded by the regulation, which applies to both current and future sources of potable water (10 NYCRR 100.17 [a]; 170.1, 5-1.1 [ee]). As evidenced by the recent consolidation effective January 1, 1981 of the Westmere Water District and McKownville Water District, wherein all of the facilities of the two districts "including the reservoir heretofore known as the McKownville Reservoir" were consolidated into the new Westmere-McKownville Water District, it appears that the Town of Guilderland has indicated its desire to retain the reservoir and its sources as a potential public water supply for future use. As such, the Krumkill and McKownville Reservoir continue to enjoy the protection of standards adopted for public water supplies despite their current lack of usage for such purposes.

Having concluded that 10 NYCRR 100.17 is applicable to this case, we turn now to the issue of whether that regulation was violated by DEC's issuance of the SPDES permit to Pyramid. Plaintiffs contend that the permit would allow Pyramid to discharge storm water runoff from the proposed mall's parking area in contravention of 10 NYCRR 100.17 (e), (f) and (m).* We disagree. Subdivisions

---

* 10 NYCRR 100.17 provides:

"McKownville Water District, town of Guilderland * * *

"(e) *Bath water, wastes.* No bath water, sink or laundry wastes or polluted liquid of any kind, except the effluent from the properly constructed and operated sewage treatment plan [*sic*] as provided in subdivision (d) of this section, shall be discharged or allowed to

(e) and (f) of the regulation, entitled "Bath water, wastes" and "Garbage, refuse", respectively, have no application to the *instant situation* which deals solely with the storm water runoff from the project's parking lot and does not involve sewage, garbage or any other wastes. To read these two subdivisions as broadly as plaintiffs would, and rely on language contained therein which would prohibit the discharge into the watercourse of the water district of any "polluted liquid of any kind" (10 NYCRR 100.17 [e]) or "any other matter that pollutes water" (10 NYCRR 100.17 [f]), would turn these administrative attempts at regulating our public water supplies into mechanisms by which all facets of land use and enjoyment would be prohibited. We do not believe this was the intent behind the promulgation of these regulations and we choose instead to read them within the context of their individual subdivision titles. In addition, our interpretation of 10 NYCRR 100.17 (e) and (f) also breathes life into the final subdivision relied upon by plaintiffs, subdivision (m), which is a general clause intending to cover all other activities not governed by the specific subdivisions which precede it.

Subdivision (m) is applicable to Pyramid's storm water runoff. However, unlike the other subdivisions relied upon by plaintiffs which speak in terms of absolute prohibition of discharges which might pollute the public water supplies, subdivision (m) instructs all persons to refrain from any act, regardless of whether previously specified, which "may result in contamination" of any portion of the water supply. No definition of "contamination" appears in the regulations protecting the specific public water supplies throughout the State (10 NYCRR Parts 100-158). Another part of the same body of regulations, however, Part 170 dealing with water supply sources throughout the State in

---

flow into the lake or any watercourse nor be deposited on or beneath the surface of the ground within 100 feet of the reservoirs or any watercourse.

"(f) *Garbage, refuse.* No garbage, refuse, putrescible matter, decayed fruits or vegetables, dead animals or parts thereof or any other matter that pollutes water shall be deposited in the reservoirs or watercourse nor on or beneath the surface of the ground within 100 feet of the reservoirs or of any watercourse nor in such manner that it can be washed by rain, melting snow or otherwise over the surface or through the ground into any reservoir or watercourse * * *

"(m) *General clause.* In addition to observing the foregoing requirements, all persons living on or visiting the watershed shall refrain from any act, though not heretofore specified, which may result in contamination of any portion of the water supply."

general, defines contamination as "any substance or characteristic which will make the water unsuitable or unsafe including a constituent or characteristic, in an amount exceeding * * * allowable limits" (10 NYCRR 170.3 [d]). Using this definition, we agree with Special Term's reasoning that since the discharge of pollutants would not automatically contaminate a water supply so long as the level of concentration of the pollutants remains at or below the allowable limits, the SPDES permit did not automatically authorize contamination as prohibited by 10 NYCRR 100.17 (m).

The "allowable limits" referred to in the definition of contamination are found in 10 NYCRR 170.4, which enumerates water quality standards for sources of water supply. Review of these standards in conjunction with the SPDES permit issued to Pyramid and under attack in this action reveals that the effluent discharges authorized by DEC under the permit are well within the DOH guidelines contained in 10 NYCRR 170.4. We, therefore, affirm the judgment of Special Term declaring that no conflict existed between DEC's jurisdiction in granting the SPDES permit to Pyramid and that of DOH under its regulation. We would note, however, that this decision upholding DEC's action in granting a permit as a prerequisite to Pyramid's construction project does not in any way interfere with the separate enforcement procedures available to DOH (see Public Health Law, art 11) if it should, at some future time, determine that its regulations regarding the public water supplies in the Town of Guilderland are being violated by the activities of Pyramid and its shopping mall.

The judgment should be affirmed, without costs.

MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment affirmed, without costs.